UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | | |
|---|---|---|
| CHARLES SMITH, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:06 CV 0526 (TCB) |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**MEMORANDUM IN SUPPORT OF
SMITH'S MOTION FOR AN AWARD OF ATTORNEY FEES
AGAINST WAL-MART STORES**

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE COURT SHOULD AWARD ATTORNEY FEES AGAINST
       WAL-MART STORES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    Fees Should Be Awarded Against Wal-Mart for Filing a SLAPP
              Suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.    Fees Should Be Awarded Against Wal-Mart Stores for Its
              Unreasonable Unwillingness to Narrow the Issues by Making
              Rule 36 Admissions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.    Wal-Mart's Counterclaims Made This an "Exceptional Case"
              Warranting an Award of Fees Under Section 35(a) of the Lanham
              Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.   SMITH SHOULD BE AWARDED $221,778.50 IN ATTORNEY FEES   17

    A.   REASONABLE HOURS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        1.   Time Expended . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        2.   *Johnson* Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            a.   Time and Labor Required . . . . . . . . . . . . . . . . . . . . . 20
            b.   Novelty and Difficulty of Issues Presented . . . . . . . 20
            c.   The Amount Involved and the Results Obtained . . . . 21
            d.   Skill and Expertise of the Attorneys . . . . . . . . . . . . . 21

    B.   REASONABLE HOURLY RATE . . . . . . . . . . . . . . . . . . . . . . . . 22

        1.   Local or Non-Local Rates . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        2.   *Johnson* Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            a.   The Customary Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            b.   Experience, Reputation, and Ability of Attorneys . . . 24
            c.   Nature and Length of the Professional Relationship
               with the Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            d.   Awards in Similar Cases . . . . . . . . . . . . . . . . . . . . . . 24
            e.   Undesirability of the Case . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Barnes*,
    168 F.3d 423 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 23

*Ale House Management v. Raleigh Ale House*,
    205 F.3d 137 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Berryhill v. Georgia Committee Support & Solutions*,
    281 Ga. 439, 638 S.E.2d 278 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blum v. Stenson*,
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Brewer-Giorgio v. Bergman*,
    985 F. Supp. 1478 (N.D. Ga. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Briggs v. Eden Council for Hope & Opportunity*,
    19 Cal. 4th 1106, 969 P.2d 564 (Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . 6

*Brooks v. Georgia State Board of Elections*,
    997 F.2d 857 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Buckley v. Direct TV, Inc.*,
    276 F. Supp. 2d 1271 (N.D. Ga.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cullens v. Georgia Department of Transport.*,
    29 F.3d 1489 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Door Systems v. Pro-Line Door Systems*,
    126 F.3d 1028 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Fogerty v. Fantasy*,
    510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hensley v. Eckerhart*,
     461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19, 20, 21

*Johnson v. Georgia Highway Express*,
     488 F.2d 714 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Johnson v. University College of University of Ala. Birmingham*,
     706 F.2d 1205 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Loranger v. Stierheim*,
     10 F.3d 776 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mason v. Pierce*,
     806 F.2d 1556 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mattel, Inc. v. Walking Mountain Productions*,
     353 F.3d 792 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Metzler v. Rowell*,
     248 Ga. App. 596, 547 S.E.2d 311 (Ct. App. 2001) . . . . . . . . . . . . . . 4, 5, 6

*Military Circle Pet Ctr. v. Cobb County*,
     734 F. Supp. 502 (N.D. Ga. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Norman v. Housing Authority of Montgomery*,
     836 F.2d 1292 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Noxell Corp. v. Firehouse No. 1 Barbeque Restaurant*,
     771 F.2d 521 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Perkins v. Mobile Housing Board*,
     847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ross Bicycles v. Cycles USA*,
     765 F.2d 1502 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*S Industries, Inc. v. Centra 2000,*
    249 F.3d 625 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Searcy v. Crim,*
    692 F. Supp. 1363 (N.D. Ga. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Smith v. Wal-Mart Stores,*
    475 F. Supp. 2d 1318 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Smith v. Wal-Mart Stores,*
    537 F. Supp. 2d 1302 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 15

*Woodhaven Homes & Realty v. Hotz,*
    396 F.3d 822 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## CONSTITUTION, STATUTES AND RULES

United States Constitution,
    First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22, 23, 25

### Statutes

Civil Rights Act,
    42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lanham Act,
    15 U.S.C. §§ 1051 *et seq.*

    Section 35(a), 15 U.S.C. § 1117(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

California Anti-SLAPP Statute
    Cal. Code Civ. Pro. § 425.16(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Georgia Anti-SLAPP Statute,
    Ga. Code Ann. § 9-11-11.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 7, 8

    § 9-11-11.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8

§ 9-11-11.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

**Rules**

Federal Rules of Civil Procedure

Rule 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Rule 37(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Introduction**

Smith obtained a declaratory judgment establishing that federal and state trademark law do not bar his sale of T-shirts containing parodies of Wal-Mart, and employing parts of Wal-Mart trademarks to identify Wal-Mart as the subject of his commentary; the judgment also protected his domain names using the "wal" portion of the Wal-Mart name, for web sites featuring his designs, and his text explaining his views about Wal-Mart and about this very case.  He also defeated Wal-Mart's counterclaims for damages and an injunction against his domain names and T-shirts. Smith has now moved the Court to award him his attorney fees against defendant/counterclaim- plaintiff Wal-Mart Stores on three separate grounds.

Fees are sought under Ga. Code Ann. § 9-11-11.1 because Wal-Mart's counterclaims against him were a SLAPP suit, filed in retaliation for Smith's "statements in connection with an issue under consideration or review by a . . . judicial body," *i.e.*, this Court.  Fees are sought under Rule 37(c)(2) because, refusing to cooperate with Smith's attempt to narrow the legal and factual issues presented to the Court, Wal-Mart stoutly rejected requested admissions of many facts that were established in the course of the cross-motions for summary judgment.  Finally, fees are sought under section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), because Wal-Mart's counterclaim against Smith was an "exceptional" case.

In this memorandum, we first explain the legal basis for an award of attorney

fees, then explain why the amount sought in the motion, $222,158.50, is justified.

## I.   THE COURT SHOULD AWARD ATTORNEY FEES AGAINST WAL-MART STORES.

### A.   Fees Should Be Awarded Against Wal-Mart for Filing a SLAPP Suit.

The first reason why attorney fees should be awarded is that Wal-Mart's state-

law counterclaims against Smith were filed, in substantial part, against Wal-Mart

parodies that were intended to comment on this very litigation, and sought an

injunction that would have suppressed Smith's non-commercial speech through the

distribution of his parodic T-shirts as well as maintenance of his Wal-Qaeda web site

and domain names.  We recognize that, before the summary judgment proceedings,

this Court rejected our contention that certain discovery was justified under the anti-

SLAPP statute, because it did not consider that Smith's parodies "constitute

statements made 'in connection with an issue' that is 'under consideration or review'

in an official proceeding within the meaning of Georgia's anti-SLAPP statute." 475

F. Supp. 2d 1318, 1324.  However, we respectfully urge the Court to revisit that

analysis in light of the undisputed evidence presented on the cross-motions for

summary judgment, and the Court's rulings on those motions.  The record clearly

supports the application of the anti-SLAPP statute here.  In addition, we have

-2-

identified a Georgia state court ruling that is squarely on point but not mentioned in the discovery briefing.

Section 9-11-11.1(b) of the Georgia Code requires verification of

any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern.

The phrase "act in furtherance of the right of free speech or the right to petition government . . . in connection with an issue of public interest or concern" is defined by section 9-11-11.1(c) as including

[1] any written or oral statement, writing, or petition made before or to a . . . judicial proceeding, . . . or [2] any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a . . . judicial body.

(numbering of clauses inserted for clarity; not in original)

This Court is the "judicial body" for purposes of this motion. Smith does not claim under the first clause of subsection (c), but he does argue that the language of that first clause is highly relevant to the construction of the second clause. The second clause plainly extends the reach of the SLAPP statute beyond statements made "before or to" judicial proceedings; it includes statements made outside such proceedings (which covers Smith's T-shirts and domain names). Moreover, although

-3-

the language of the second clause would cover statements about a judicial proceeding, made outside that proceeding, it is not limited to statements about proceedings. For SLAPP coverage, it is sufficient that the statement be "in connection with an issue under consideration or review" in that proceeding. *See Berryhill v. Georgia Comm. Support & Solutions*, 281 Ga. 439, 442, 638 S.E.2d 278, 281 (2006) ("the necessary statement is not required to constitute a petition for redress of grievances, but may instead relate to an official proceeding instigated by someone else and constitute an act in furtherance of the right of free speech."). Still another textual clue to the reach of the statute is provided by the language in the second line of subsection (b), immediately before the words "act in furtherance" – the SLAPP statute covers not only acts that **are in fact** acts within the subsection (c) definition, but also, as subsection (b) indicates, acts "which could reasonably be construed" as being within one of the two categories set forth in subsection (c). Thus, the law extends not only to statements that are "actually" in connection with an issue before a judicial body, but also to statements that "could reasonably be construed" to be about such an issue.

Application of the SLAPP statute to this case, based on the second clause of subsection (c), is compelled by *Metzler v. Rowell*, 248 Ga. App. 596, 547 S.E.2d 311 (Ct. App. 2001). There, Metzler had a zoning petition pending in the Atlanta city council, and a lawsuit relating to that request was pending in Fulton County Superior

-4-

Court.  Several parties opposed to Metzler's petition sought leave to intervene in the lawsuit.  An attorney representing area residents sent a letter to Metzler and Torrey, to whom Metzler was trying to sell the land, complaining about activities on the land that were inconsistent with the current zoning, and indicating that if they did not stop he would seek an injunction.  A city council member contacted Torrey to warn him that the land was the subject of a lawsuit and that the city would oppose the development.  After Torrey decided not to buy the land, Metzler sued over both the letter and the council member's contact with Torrey, and the court held that these communications, although not filed in any of the pending judicial proceedings, were nonetheless protected by the SLAPP statute.  The majority opinion held, "A letter written by an attorney for parties to a petition to intervene, directed to the owner of the land in litigation and a developer actually performing work on that land, is clearly made 'in connection with an issue' of zoning and development under consideration by a 'judicial body.'"  248 Ga. App. at 598-599, 547 S.E.2d at 314.

The issue whether a communication about a lawsuit or proceeding is protected even if not made **to** the court or other body was precisely the legal question that divided the court in *Metzler*.  The dissent stated, "To come within the statute, the speech or petition must be directed to or made before a legislative, executive, or

judicial body." 248 Ga. App. at 603, 547 S.E.2d at 317. But the majority took the

dissent to task for this overly narrow reading of the statute:

> As established by these interlocking Code sections, the law includes two
> alternative definitions of a protected statement: any statement made to
> any "official proceeding authorized by law"; or any statement made in
> connection with an issue under consideration by any official proceeding.
> The dissent fails to take into account the scope of the latter definition.

248 Ga. App. at 598, 547 S.E.2d at 314.[1]

Statements made "in connection with an issue" in litigation, although not in the

proceeding itself, were also the basis for the SLAPP award in *Buckley v. Direct TV,*

*Inc.,* 276 F. Supp.2d 1271 (N.D. Ga. 2003). There, customers sued a satellite

television provider over allegedly extortionate threats of litigation. Judge Shoob held

---

[1] The California courts have given a similar reading to the clause of that state's anti-SLAPP statute, Cal. Code Civ. Pro. § 425.16(e), that is analogous to Clause 2 of Georgia's anti-SLAPP statute. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 969 P.2d 564 (Cal. 1999). California's statute has four clauses, of which the first two are similar to the Georgia statute's two clauses. In *Briggs*, the defendant was sued over statements made by representatives of a community group (ECHO) to tenants relating to the issues pending in an official proceeding that ECHO was helping to further. ECHO gave one tenant information about how to challenge the habitability of her apartment in the proceeding, and helped two other tenants by giving them information to help them with disputes over their security deposits. The California Supreme Court held that these statements, although not in court, were "in connection with issues under consideration or review by executive or judicial bodies or proceedings." 19 Cal. 4th at 1114-1115, 969 P.2d at 476.

the threat letters covered by the SLAPP statute because they were "in connection with an issue under consideration or review by a . . . judicial body ." *Id.* at 1274.

That language covers Smith's T-shirts, domain names, and web sites. In this case, Wal-Mart brought groundless trademark claims that sought to suppress Smith's speech about Wal-Mart. For example, this Court's ruling on the trademark infringement issues recognized that Smith's designs and words are "successful parodies," *i.e.*, speech, 537 F. Supp.2d at 1316-1317, and on the dilution issues it held that Smith's parodies were non-commercial speech protected by the First Amendment. 537 F. Supp.2d at 1339-1340. Moreover, as Smith's affidavit stated without contradiction, ¶¶ 33, 37(a), (b), (f), (g), (h), (j), he devised his Wal-Qaeda concept to compare Wal-Mart's use of this litigation to try to suppress his free speech with the well-known terrorist organization. His "Freedom-Haters Always," "Stomp on Free Speech," and "Bentonville Bullies" designs were specifically directed to the same point. Some of his other designs were intended to comment more generally on Wal-Mart's baleful influence on legislatures and government agencies. *E.g.*, *id.* ¶ 37(e). In all these respects, Smith's speech – the target of Wal-Mart's lawsuit – was quite literally within the scope of the second clause of the SLAPP statute's definitional section. Moreover, the Court's summary judgment ruling recognized that "Smith intended the word 'Wal-Qaeda' as a comment on what he considered to be

Wal-Mart's terrorist-like attack on his free speech through threats of litigation," 537 F. Supp.2d at 1311, and that the web sites at issue, which Wal-Mart filed its counterclaims to suppress, "discuss this lawsuit" among other things. *Id.* at 1338.

Not only was the SLAPP statute applicable, but the verification was signed in violation of the statute. Although Wal-Mart's counterclaims may not have risen to the level of bad faith, they were certainly groundless, as the Court's summary judgment ruling shows. Moreover, the lawsuit literally sought "to suppress [Smith]'s right of free speech," § 9-11-11.1(b) – that is exactly what the injunctive relief sought by the counterclaim would have done had it been granted. An award of fees is, therefore, called for by subsection (b). Although the statute would permit an award against "the person who signed the verification," who in this case was Wal-Mart's former local counsel, Mr. Jameson, Smith is not seeking any fees from counsel. There is no reason to believe that counsel did anything other than follow instructions from his client, and we believe it is the client that ought to be liable for the reasonable attorney fees.

**B.    Fees Should Be Awarded Against Wal-Mart Stores for Its Unreasonable Unwillingness to Narrow the Issues by Making Rule 36 Admissions.**

The second basis for awarding fees against Wal-Mart is its unreasonable refusal to narrow the issues by agreeing to Smith's requests for admissions. In

serving requests for admissions, Smith recognized that Wal-Mart had invested enormous resources in the Jacoby survey to attempt to establish the reactions of consumers to two specific T-shirt designs – the "Walocaust smiley eagle" and the "Support Our Troops Boycott Wal-Qaeda." But Jacoby had not studied in any way the reactions of any consumers to the remaining designs, or to Smith's domain names, or to Smith's web sites; nor was there any study of how consumers would interact with search engines in navigating to Smith's web sites. Moreover, Smith had furnished Wal-Mart with documents in discovery establishing that, whatever Smith's motives might have been, the actual revenues and expenses showed that he had taken a "loss" (Wal-Mart could have made its profit **motive** argument without denying that he had, in fact, not succeeded in such an objective). Smith also showed that he had done nothing to ransom the domain names or otherwise acted "with a bad faith intent to profit" under the cybersquatting law. Smith served admissions on these subjects to take those issues off the table, so that the parties could focus on the two designs that had actually been studied and get the legal issues resolved in that respect.

However, Wal-Mart blew off the admissions with evasive responses and denials. Wal-Mart refused to admit that Smith had no "profit" on his sales of Walocaust or Wal-Qaeda items, responding that it did not understand what a "profit" is, and that because Smith had received "financial remuneration" for sales, the request

was denied.  Admission Nos.  1-2.  The evidence on summary judgment, in the form

of Smith's affidavit and supporting records, established beyond cavil that Smith's

revenues from his sales were significantly below his costs, and the Court so found.

537 F. Supp.2d at 1312.  As for admissions sought about infringement, dilution and

fair use with respect to each of the un-studied Walocaust designs (Admission Nos. 4-

11) and the designs sold through the Wal-Qaeda pages at CafePress (Admission Nos.

25-51), Wal-Mart dodged the question, responding to each that "with respect to

Smith's commercial activities, denied."   Because Smith was not asking about

commerciality in these admissions, these responses were evasive at best.  The Court

found, however, that even the Jacoby study, which was Wal-Mart's best effort to

present evidence of a likelihood of confusion or dilution, had no bearing on the

unstudied designs, because Jacoby himself had admitted at his deposition that

consumer responses depended on the precise stimulus presented.  537 F. Supp.2d at

1331.  Thus, not only was the truth of these facts established, but Wal-Mart had no

reasonable basis for refusing to admit them.  Similarly, Wal-Mart refused to admit

that the domain names themselves were not confusing, infringing or diluting, to admit

that they made fair use of the trademarks; to admit that the domain names were not

registered with a bad faith intent to profit (Admission Nos. 12-17, 52-56); and to

admit that the web sites themselves were not confusing, or that consumers using

-10-

search engines would experience no confusion when they saw search results showing Smith's web sites.  (Admission Nos. 18-21, 57-60).  The truth of these facts was shown in Smith's Affidavit, ¶¶ 19, 26(a), 35, 46-47, as well as by a simple review of the relevant web pages and search engine results.  Wal-Mart did not even bother to seek summary judgment with respect to the domain names and web sites, or to brief those issues in response to Smith's summary judgment motion.  If Wal-Mart was not going to contest these points, it should have simply made the admissions and saved Smith the trouble of proving and briefing the issues.[2]

Accordingly, fees should be awarded to Smith against Wal-Mart for its obdurate response to admissions, pursuant to Rule 37(c)(2).  In addition, we return to this litigation tactic in the next section of this brief, which shows why this was an "exceptional case" under section 35(a) of the Lanham Act.

### C.    Wal-Mart's Counterclaims Made This an "Exceptional Case" Warranting an Award of Fees Under Section 35(a) of the Lanham Act.

Third, the unusual facts of this case make it exceptional under the Lanham Act. The Eleventh Circuit allows awards of attorney fees, within the district court's

---

[2]In fact, Wal-Mart admitted only the three paragraphs whose text had been negotiated as a compromise that allowed Wal-Mart not to respond to certain interrogatories and document requests, thus narrowing the issues to be presented to the Court on Smith's motion to compel discovery.  Admission Nos. 63-65.

discretion, whenever either the prevailing plaintiff or the prevailing defendant undertook "acts which the courts have characterized as malicious, fraudulent, deliberate, and willful." *Ross Bicycles v. Cycles USA*, 765 F.2d 1502, 1509 (11th Cir. 1985). Although generally this is a strict standard for fees, there is no question that Wal-Mart acted "deliberately" in threatening to sue Smith for trademark infringement and dilution, and in bringing counterclaims for an injunction and damages.

However, as the Seventh Circuit has pointed out, the mere fact that a plaintiff has "deliberately" brought a trademark claim cannot alone be a basis for awarding fees, because every claim is "deliberately" brought, yet the statute limits fee awards to "exceptional" cases. *Door Systems v. Pro-Line Door Systems*, 126 F.3d 1028, 1031 (7th Cir. 1997). To distinguish those cases deliberately brought that are exceptional and hence merit an award of fees against the losing plaintiff, the Court should determine whether the suit was "oppressive." A "suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *S Industries, Inc. v. Centra 2000*, 249 F.3d 625, 627 (7th Cir. 2001). "A suit can be oppressive because

of lack of merit and cost of defending even though the plaintiff honestly but mistakenly believes that he has a good case." *Door Systems*, 126 F.3d at 1032.[3]

Other circuits have similarly focused on the plaintiff's or counterclaim plaintiff's litigation tactics that imposed "economic coercion" by needlessly increasing the cost of defending. *Noxell Corp. v. Firehouse No. 1 Barbeque Rest.*, 771 F.2d 521, 526-527 (D.C. Cir. 1985); *Ale House Mgmt. v. Raleigh Ale House*, 205 F.3d 137, 144 (4th Cir. 2000). In *Ale House*, the Fourth Circuit approved as factors the plaintiff's "economic coercion" and "groundless arguments"; it also approved the district court's consideration of the fact that a "successful company" was using its resources to hinder the defendant's business venture. *Id.* Similarly, the Ninth Circuit remanded for consideration of an award of attorney fees when a huge national company brought an action against an artist who created parodies of its trademarked "Barbie" character. *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2004). Noting that the defendants' "use constituted nominative fair use and

_____

[3]Smith first filed suit for a declaratory judgment of non-liability, partly to establish for the benefit of CafePress that he was entitled to sell his parodies, and partly to avoid having to defend in Wal-Mart's home court in Bentonville. However, Wal-Mart was the real plaintiff, not only because it filed counterclaims, but also because it sought affirmative relief, including an injunction and damages. Wal-Mart eventually limited its monetary claim to nominal damages to secure Smith's waiver of objections to the belated provision of the Jacoby Report, which was provided after the time specified for expert witness disclosures in the pre-trial schedule.

was protected by policy interests in free expression," the court directed the district court to decide whether the plaintiff's claims were "groundless or unreasonable." *Id.*

Moreover, in deciding whether to exercise their discretion to award fees to a prevailing defendant under the Copyright Act (which is like the Lanham Act in that it allows fees to prevailing plaintiffs but does not require them, although it does not limit fees to "exceptional" cases), many courts consider the impact of unsuccessful copyright claims on junior users, and the public service performed by defendants who "help . . . establish the boundaries of infringement and further the purpose of 'enriching the general public through access to creative works.'" *Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1484 (N.D. Ga. 1997), *quoting Fogerty v. Fantasy*, 510 U.S. 517, 527 (1994). Indeed, because defendants have no prospect of recovering awards of damages from which they can pay their lawyers, "without the prospect of such an award, [a defendant] might be forced into a nuisance settlement or deterred all together from exercising his rights." *Woodhaven Homes & Realty v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005). This consideration is equally applicable to awards of attorney fees in favor of a prevailing trademark defendant.

The facts of this case present an especially strong case for an award of attorney fees. Smith's parodies, although expressing strong opinions using comparisons that Wal-Mart understandably did not like, plainly **were** parodies, and in the end it was

-14-

their character as parodies that decided this case.  Their parodic character controlled the outcome of Wal-Mart's dilution claims, because the very reason why Wal-Mart was outraged by the parodies was their expressive character, which constituted non-commercial speech outside the scope of dilution law.  That this case involved parodies was also decisive in the Court's assessment of several of the "*Safeway* likelihood of confusion*" factors.  537 F. Supp.2d at 1335-1336, 1338.  But even though the outcome of the case ultimately turned on a straight-forward question of law – were Smith's Walocaust and wal-qaeda words and images parodies – Wal-Mart needlessly increased the cost and difficulty of this case by introducing the Jacob Jacoby report.  The submission of that report vastly increased the amount of time that both defense counsel **and the Court** had to spend on this case.  Defense counsel had to engage in a lengthy search for rebuttal experts, with the difficult condition that (1) Smith could not afford a counter-study, on which many top experts insist as a condition of testifying, and (2) Smith had to find pro bono experts.  Moreover, defense counsel had to analyze the report and develop a line of cross-examination for deposing Jacob Jacoby, with the help of non-testifying experts (who would not testify because Smith could not afford to buy a survey) as well as consultation with many lawyers who had dealt with Jacoby in the past and had to obtain access to his previous reports to find inconsistencies between this report and his prior work. The need to

-15-

address Jacoby's study vastly increased the briefing because of the *Daubert* motions which, although denied, contributed substantial detail to the analysis of Jacoby's study. And analysis of Jacoby's study consumed well over half of the Court's published opinion[4] – only to be denied admissibility because, despite Jacoby's expertise, the study was so deeply flawed. This was a prime example of a huge company throwing its weight around in the hope that its ability to fund a junk science study would drive Smith's costs up so high that he could not defend the case.

This strategy was compounded by Wal-Mart's refusal to drop spurious claims, as shown by the foregoing discussion of Wal-Mart's refusal to make Rule 36 admissions. For example, Wal-Mart never presented **any** evidence in support of its infringement, dilution or cybersquatting claims against Smith's domain names, and it devoted barely a few lines of its opposition to summary judgment to the issue; yet its refusal to drop that issue or make relevant admission forced Smith to devote several precious pages of his brief (and supporting materials) to that issue. Jacoby never studied the great bulk of Smith's designs and never produced any evidence to show that they were infringing or diluting; yet Wal-Mart persisted in its claims

---

[4]As published in 537 F. Supp. 3d, the Court's opinion is pages 1308-1340; its legal analysis begins on page 1313; and its analysis of infringement and dilution consumes pages 1315-1340. The Jacoby Report is discussed at pages 1317-1335.

against them.  And Wal-Mart was so determined to argue that Smith was making a commercial use of its marks that it was unwilling to admit, as noted earlier, the wholly obvious fact that Smith made no profit on these activities.

In this case, a big company was offended by what Smith did and, despite the strong legal protection accorded to parodists, tried to litigate the parodist into the ground.  Smith may have won this case, but Wal-Mart has sent a message – if your parody offends us, it will cost you, and most parodists won't find lawyers who can afford to defend a case like this.  Only an award of attorney fees for this exceptional case will provide a guarantee to others in Smith's position that they, too, will be able to defend their free speech rights.

## II.    SMITH SHOULD BE AWARDED $221,778.50 IN ATTORNEY FEES.

As shown by the attached affidavits and exhibits, the value of the legal services provided to Smith to enable his victory in this case is $222,158.50, summarized in the following table:

| Attorney | Hours | Hourly Rate | Fee |
|----------|-------|-------------|-----|
| Levy | 462.9 | $440 | $203,676.00 |
| Beck | 58.7 | 215 | 12,620.50 |
| Weber | 14.9 | 380 | 5,662.00 |
| Garrett | .8 | 250 | 200.00 |
| **TOTALS** | 536.3 | | $222,158.50 |

In determining the value of lawyers' services, the Court should multiply the hours reasonably spent by a reasonable hourly rate to compute the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "The lodestar figure represents a presumptively reasonable fee." *Military Circle Pet Ctr. v. Cobb County*, 734 F. Supp. 502, 504 (N.D. Ga. 1990). And where the prevailing party "has obtained excellent results, his attorney should receive a fully compensatory fee." *Hensley*, 461 U.S. at 435. Here, Smith was fully successful – he obtained a declaratory judgment that he is entitled to continue selling his parody T-shirts, and dismissing Wal-Mart's counterclaims in their entirety. And, in fact, CafePress.com is again carrying the Walocaust T-shirts that it took off its site after receiving Wal-Mart's threat of litigation. *See* www.cafepress.com/walocaust.

## A.    REASONABLE HOURS

### 1.    Time Expended

The hours claimed or spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley*, 461 U.S. at 433.  As required, counsel have attested that they exercised "billing judgment" in determining the hours reasonably expended on the merits, 461 U.S. at 437, and Smith's attorneys should also be compensated for the time reasonably expended in seeking an award of fees from the Court. *Johnson v. Univ. Coll. of Univ. of Ala. Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983).    Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required . . . ." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).  "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case ." *Id.*  Here, the affidavits of counsel support the number of hours set forth in the above table summarizing the fee request.

### 2.    *Johnson* Factors

Although  the  Eleventh  Circuit  followed  Supreme  Court  precedent  and abandoned *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), in favor of the lodestar formula, *Johnson* factors may still be considered in setting a

reasonable fee. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Four *Johnson* factors – time and labor required, novelty and difficulty of the case, amount involved and result obtained, and the skill of the attorneys needed to perform the legal service properly – help assess the reasonableness of the hours claimed. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

     **a.**    **Time and Labor Required.** In making a fee request, "[c]ounsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301. Counsel should provide in the fee request the hours spent "with sufficient particularity." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Smith's counsel have affirmed that they have carefully reviewed their detailed time records, and exercised prudent billing judgment with regard to the billable time claimed. Levy Affidavit ¶ 12; Weber Affidavit ¶ 4; Beck Affidavit ¶¶ 7-8. Detailed listings are attached to counsel's affidavits.

     **b.**    **Novelty and Difficulty of Issues Presented.** Trademark cases are notoriously expensive and time-consuming to litigate, because they depend on the multi-factor *Safeway* test and often, as in this case, evaluation of survey evidence. The issues in this case were novel because although there have been several reported

trademark parody cases, almost all of them involved commercial operators; cases involving individual, non-business parodists are very rare, if only because individuals like Smith can rarely obtain counsel. Although Smith put forward arguments that could short-circuit the normal complexity of such cases, arguing the expressive uses should be protected so long as a parodist's intention is to comment and not to deceive consumers, or so long as the trademark used is relevant to the subject of the expression, Smith could not rest on the assumption that his legal arguments would succeed, and in fact the Court based its ruling on a detailed analysis of the *Safeway* factors and of the Jacoby Report, as rebutted by the Teach and Rosenblatt reports. Moreover, as discussed above, Wal-Mart declined to concede any of its theories or drop claims against any of Smith's designs; the large number of hours devoted to the case was required to respond to all of Wal-Mart's contentions.

      **c.**    **The Amount Involved and the Results Obtained.** Although *Hensley* held that the result obtained is an important factor in determining attorney fees, the determination to be made is the extent to which the prevailed party won on his or her claims, not the amount of money he or she received. 461 U.S. at 435. Here, Smith fully succeeded in defending his right to sell T-shirts criticizing Wal-Mart.

**d.     Skill and Expertise of the Attorneys**.  Detailed information regarding the skill and expertise of Smith counsel is contained in their affidavits. Plaintiffs' legal team included counsel with extensive experience in litigation at the intersection of intellectual property and free speech, as well as the leading free speech lawyer in this area.  The experience and specialized expertise of counsel enabled Smith to pursue this case successfully **and** efficiently.

> First Amendment issues can rarely be decided on the basis of extant 'black letter' law. Success in this case depended upon counsel's ability to ferret out specific, relevant facts and to present them in a cogent and persuasive manner. It must have been clear from the very beginning of this lawsuit that this case would demand long hours of work and little guarantee of compensation.

*Searcy v. Crim*, 692 F. Supp 1363, 1366 (N.D. Ga. 1988).

**B.     REASONABLE HOURLY RATE**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman*, 836 F.2d at 1299.  The market rate applies whether the attorney is a public interest lawyer or in private practice.  *Mason v. Pierce*, 806 F.2d 1556, 1557-58 (11th Cir. 1987).

### 1.    Local or Non-Local Rates

Hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" is normally the area where the district court sits — in this case, Atlanta. *Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The hourly rates sought by counsel in this case are amply supported by the opinions expressed in the affidavits of Gerald Weber and Brian Spears.

However, when the specialized expertise of a particular attorney or attorneys from a distant locale is required to litigate the suit effectively, fees may be awarded to non-local attorneys based on prevailing rates in the community where those attorneys normally practice. *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993). Here, the Levy and Weber affidavits explain why there was a particular need for out-of-town counsel in this case. IP litigation is highly specialized; no lawyers with expertise in both First Amendment and IP litigation could be located in Atlanta, even to be local counsel; and, in fact, it is highly unlikely that the IP department of **any** private law firm would have taken this case. Mess'rs Levy and Beck specialize in handling Internet free speech cases raising IP issues, and their rates are fully

supported by the so-called *Laffey* matrix that the United States District Court for the District of Columbia uses to set hourly rates in statutory fee cases pending in the District of Columbia. Weber Affidavit ¶ 5; Levy Affidavit ¶¶ 9-11; Beck Affidavit ¶ 5. In any event, Levy's and Beck's rates are well within the norm for the Atlanta and Northern District of Georgia markets.[5]

     **2.**    ***Johnson* Factors**

     **a.**    **The Customary Fee.** Although counsel work for non-profit organizations and do not charge their own clients, the affidavits of counsel and of Brian Spears attest that the rates sought in this case are commensurate with the market for legal services in both Atlanta and Washington, D.C.

     **b.**    **Experience, Reputation, and Ability of Attorneys**. The experience, reputation and ability of the counsel is set forth in the attached affidavits.

     **c.**    **Nature and Length of the Professional Relationship with the Client.** This factor does not apply. Counsel have no continuing relationship with Smith.

     **d.**    **Awards in Similar Cases.** Counsel's affidavits reflect that attorney fees have been awarded in previous cases commensurate with the rates sought here.

---

[5]Wal-Mart used lawyers from the New York office of a national law firm based in Los Angeles, instead of Atlanta lawyers, and presumably paid New York rates, although no doubt for a different reason than Smith's reason for using out-of-town counsel.

    **e.**    **Undesirability of the Case.**  This case in particular would have been

unattractive because of the way Smith expressed himself about Wal-Mart, and

because the issues that Smith needed to raise would likely run counter to the interests

of other clients of most large firms that have IP departments.  *See* Levy Affidavit ¶

11. And, in fact, Mr. Weber's experience in trying to find local counsel with both IP

and First Amendment experience supports the contention that this was an undesirable

case, warranting a fully compensatory fee award.  Trademark cases have a tendency

to be long and expensive, without any guarantee of fees because there is no

presumption of fee awards for prevailing parties, as there is, for example, in 42 U.S.C.

§ 1988.  As a result, they are unattractive candidates for pro bono work.

**CONCLUSION**

    Smith's motion for an award of $221,778.50 in attorney fees should be granted.

                Respectfully submitted,

| | |
|---|---|
|      /s/ Gerald Weber |     /s/ Paul Alan Levy |
| Gerald Weber (Georgia Bar 744878) | Paul Alan Levy (DC Bar 946400) |
| ACLU of Georgia Foundation | Gregory Beck (DC Bar 494479) |
| 70 Fairlie Street, S.W., Suite 340 | Public Citizen Litigation Group |
| Atlanta, Georgia 30303 | 1600 - 20th Street, N.W. |
| (404) 523-6201 | Washington, D.C. 20009 |
| | (202) 588-1000 |

May 5, 2008

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | | |
|---|---|---|
| CHARLES SMITH, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:06 CV 0526 (TCB) |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies

(1) that the foregoing motion for award of attorney fees and supporting memorandum and all accompanying papers have been electronically filed with the Clerk using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record, and

(2) that the memorandum of law has been prepared in Word Perfect in 14 Point Times Roman type, and then published into PDF format.

/s/
_____
Paul Alan Levy (DC Bar No. 946400)

Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

May 5, 2008