IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHARLES SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | No. 1:06-cv-526-TCB |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court are Plaintiff Charles Smith's motions for attorneys' fees [106, 110].[1] For the reasons set forth below, the Court DENIES Smith's motions.

**I.   Background**

This action arose from the contention of Defendant Wal-Mart Stores, Inc. that its registered trademarks "WALMART"; "WAL-MART"; and "WAL★MART"; its registered word mark "ALWAYS LOW PRICES. ALWAYS"; and its "well-known smiley face mark" were infringed by Plaintiff Charles Smith's anti-Wal-Mart merchandise.

---

[1] On March 31, 2008, Plaintiff filed an interim motion for attorneys' fees stating the requested amount and the rules and statutes pursuant to which he seeks the fees [106]. On May 5, 2008, he filed another motion for attorneys' fees pursuant to the same rules and statutes, this time supported by a legal brief and affidavits [110].

Smith had created various designs and slogans that incorporated the word "Walocaust," a word Smith invented by combining the first three letters of Wal-Mart's name with the last six letters of the word "holocaust."[2] In late July 2005, to help draw attention to his Walocaust concept and his views about Wal-Mart in general, Smith arranged for some of his designs to be printed on t-shirts and other items like mugs, underwear, camisoles, teddy bears, bumper stickers and bibs that could be purchased through www.CafePress.com. He also placed text on his CafePress account home page that included harsh statements about Wal-Mart. When his www.walocaust.com website became active, Smith also included a link from it to his CafePress account.

On December 28, 2005, and again on February 1, 2006, Wal-Mart wrote to Smith and to CafePress, asserting that Smith's Walocaust CafePress webpage violated Wal-Mart's trademark rights, and demanding

---

2 Smith created four basic Walocaust designs. One design depicted a blue stylized bird modeled to resemble a Nazi eagle grasping a yellow smiley face in the same manner that a Nazi eagle is typically depicted grasping a swastika. Above the bird image, the word "WAL★OCAUST" was printed in a blue font comparable to that commonly used by Wal-Mart. Two designs were text only: one design read, "I ♥ WAL★OCAUST[.] They have FAMILY VALUES and their ALCOHOL, TOBACCO and FIREARMS are 20% OFF"; and another design read, "WAL★OCAUST[.] Come for the LOW prices[,] stay for the KNIFE fights." The fourth was a graphical design that depicted the word WAL★OCAUST on a Wal-Mart-like storefront that also included the Nazi eagle image, a poster advertising family values and discounted alcohol, tobacco and firearms, and other images commenting negatively on Wal-Mart.

that they cease selling all products imprinted with his various anti-Wal-Mart designs. Wal-Mart also objected to Smith's registration and use of the domain name www.walocaust.com, demanding that Smith cease using the domain name and transfer ownership of it to Wal-Mart. In response, CafePress removed all of Smith's Wal-Mart-related merchandise from his online store so that only non-Wal-Mart-related merchandise remained available at www.cafepress.com/walocaust.

On March 6, 2006, Smith filed this action, seeking a declaratory judgment of his right to sell his Walocaust merchandise and demanding costs and attorneys' fees. He also updated his Walocaust website to denounce Wal-Mart for threatening to sue him.

On or about March 8, 2006, after filing his declaratory judgment complaint, Smith also registered the domain names www.wal-qaeda.com and www.walqaeda.com. "Wal-Qaeda" was another portmanteau Smith coined, this time combining the name "Wal-Mart" with "Al-Qaeda." Smith intended the word "Wal-Qaeda" as a comment on what he considered to be Wal-Mart's terrorist-like attack on his free speech through threats of litigation.

On a new site that was accessible via both www.wal-qaeda.com and www.walqaeda.com, Smith displayed various graphics incorporating his new word and also posted other anti-Wal-Mart slogans. Once he became certain that CafePress was open to carrying his new Wal-Qaeda concepts, he created a new Wal-Qaeda CafePress webpage where he again offered various items commenting on Wal-Mart.[3]

On March 28, 2006, Wal-Mart filed its answer and counterclaim, asserting various federal trademark claims and related state law claims against Smith for the Walocaust website and products. Wal-Mart

---

[3] All of the products offered on Smith's new Wal-Qaeda CafePress webpage incorporated the word "Wal-Qaeda" except for three concepts: one imprinted with a graphic depicting a shoe hovering over a yellow unhappy face with the legend "FREEDOM-HATER-MART STOP Stomping on our free speech!"; another with the legend "BENTON★VILLEBULLIES ALWAYS"; and a third reading simply, "FREEDOM HATER MART."

The site offered two text-only designs that depicted the word "WAL-QAEDA" in a blue block letter font similar to Wal-Mart's: one with the legend "SUPPORT OUR TROOPS[.] BOYCOTT WAL-QAEDA" and another reading, "WAL-QAEDA[.] Freedom Haters ALWAYS."

The site also offered products imprinted with five other graphical concepts. One of those concepts was a revision of the Walocaust storefront design, altered to replace "WAL★OCAUST" with "WAL-QAEDA[.] THE DIME STORE FROM HELL"; to replace the Nazi eagle with "FREEDOM HATERS ALWAYS" and "2 days without a k[n]ife fight"; and to make other small changes. Another concept depicted an American flag in the shape of a United States map with the word "DECEASED" stamped over it. Above the flag was printed "WAL-QAEDA[.] THE DIME STORE FROM HELL," and under the flag appeared the phrase "CAUSE OF DEATH: A Dime Store." In the third concept, the slogan "ATTENTION WAL★QAEDA[.] THESE COLORS DON'T RUN" was imprinted over a modified American flag, and in the last two concepts, Hillary Clinton was named the "WAL-QAEDA Employee of the Year 1986-1992," and Chairman Mao Zedong was awarded the "WAL-QAEDA Human Resource Achievement Award."

Smith sold sixty-two shirts, including the fifteen purchased by one of the law firms representing Wal-Mart in this matter.

4

contended that Smith engaged in (1) trademark infringement in violation of 15 U.S.C. § 1114(1) and common law; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark dilution by tarnishment in violation of 15 U.S.C. § 1125(c); and (4) cybersquatting in violation of 15 U.S.C. § 1125(d). Wal-Mart also brought state law claims for (1) common law trademark infringement; (2) unfair competition in violation of O.C.G.A. § 23-2-55 and common law; (3) deceptive trade practices in violation of O.C.G.A § 10-1-370 *et seq.*; and (4) trademark dilution and injury to business reputation in violation of O.C.G.A. § 10-1-451(b).

In its prayer for relief, Wal-Mart sought an award of ownership of Smith's Wal-Mart-related domain names, an injunction precluding Smith from making commercial use of any designation beginning with the prefix "WAL," and an award of nominal damages. It also claimed costs and attorneys' fees under 15 U.S.C. § 1117.

On April 28, 2006, Wal-Mart amended its counterclaims to include the Wal-Qaeda website and products.

In May 2007, the parties made cross-motions for summary judgment and motions seeking to exclude each others' expert witness evidence. On July 24, 2007, the motions were submitted to the Court for consideration,

and on March 20, 2008, the Court issued its Order denying the motions to exclude expert witness evidence, granting Smith's motion for summary judgment, and denying Wal-Mart's motion for summary judgment. In the Order, the Court noted that the only possible remaining claim was Smith's prayer for attorneys' fees.

Smith has now moved for the attorneys' fees incurred in bringing his action and in defending against Wal-Mart's counterclaim. He seeks an award of $222,158.50 pursuant to Federal Rules of Civil Procedure 37(c)(2) and 54(d), 15 U.S.C. § 1117(a), and the Georgia anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, O.C.G.A. § 9-11-11.1.

## II. Discussion

### A. Georgia's Anti-SLAPP Statute

Georgia's anti-SLAPP statute provides that the Court may sanction violation of the statute by ordering the offending party to pay the reasonable attorneys' fees of the prevailing party. O.C.G.A. § 9-11-11.1(b). Smith contends that he is entitled to an award of attorneys' fees pursuant to the statute because Wal-Mart's counterclaim against him constituted a SLAPP suit filed in retaliation for Smith's "statements in connection with

an issue under consideration or review by a . . . judicial body"—this Court. *See* O.C.G.A. § 9-11-11.1(c).

Smith is not entitled to attorneys' fees under Georgia's anti-SLAPP statute because he did not prevail on his anti-SLAPP claim. On February 21, 2007, the Court issued an order in which it found, "[a]fter careful review of the parties' filings as well as hearing oral argument on this issue, . . . Georgia's anti-SLAPP statute does not apply to this case." *Smith v. Wal-Mart Stores, Inc.*, 475 F. Supp. 2d 1318, 1324 (N.D. Ga. 2007). The Court expressly rejected Smith's argument that his use of "phrases such as 'Wal-Qaeda' and 'Freedom Haters, Always' constitute[d] statements made 'in connection with an issue' that is 'under consideration or review' in an official proceeding within the meaning of Georgia's anti-SLAPP statute." *Id.* Smith filed no motion for reconsideration.

Thus, the issue of whether Smith is entitled to attorneys' fees pursuant to O.C.G.A. § 9-11-11.1 was determined more than one year ago. The Court declines to reconsider its ruling at this late date. *See* LR 7.2E (providing that a motion for reconsideration of an order must be filed within ten days of its entry). Consequently, Smith's motion for attorneys' fees pursuant to O.C.G.A. § 9-11-11.1 is hereby DENIED.

## B.   Lanham Act

Under the Lanham Act, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Eleventh Circuit, "an 'exceptional case' is one that can be characterized as 'malicious, fraudulent, deliberate and willful,' or one in which 'evidence of fraud or bad faith' exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (citations omitted); *accord Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001). Even when a case is "exceptional" under the Lanham Act, "the decision to grant attorney fees remains within the discretion of the trial court." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994).

Smith argues that the "unusual facts" of this case made it "exceptional under the Lanham Act" and the Court should therefore award attorneys' fees to him pursuant to the Act.

Smith admits that the facts of the case do not make it an "exceptional case" under the Eleventh Circuit's established interpretation of § 1117(a) (Doc. 110-2 at 12). He argues nevertheless that the Court should apply the standards of other circuits or the standards that courts have applied in copyright cases.

Smith first contends that the Court should apply the Seventh Circuit's "oppressiveness" standard. *See S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (noting that a "suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit"). He then argues that the Court should find the case exceptional because he was "economically coerced" when he was forced to defend against Wal-Mart's groundless and unreasonable arguments. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2004) (remanding trademark case to the district court to remedy the lack of reasoning for denying an award of attorneys' fees); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) (allowing for an award of attorneys' fees on a trademark case based on a showing of "something less than bad faith"); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526-27 (D.C. Cir. 1985) (same). *See also Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005) (considering the compensation and deterrence value of an award of attorneys' fees to a party who prevails in the face of an unreasonable copyright action); *Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1484 (N.D. Ga. 1997)

9

(considering the value of compensating a prevailing party for the public value of establishing the boundaries of copyright infringement).

The Court is unconvinced by Smith's citation to foreign authority interpreting the Lanham Act. Although some circuits allow a prevailing party to recover Lanham Act attorneys' fees upon a showing of something less than bad faith, the going standard in the Eleventh Circuit is "fraud or bad faith."[4] *Lipscher*, 266 F.3d at 1320.

The Court finds Smith's analogy to copyright law no more compelling. As Smith admits, the Copyright Act is like the Lanham Act in that it provides the court discretion to award attorneys' fees to the prevailing party, but unlike the Lanham Act, the Copyright Act does not limit the award of fees to *exceptional* cases. Thus, Smith's authority for considering the compensation and deterrence value of an award of attorneys' fees—

---

[4] The Court also rejects Smith's argument that the Court should apply the Eleventh Circuit's alternative standard of allowing fees when the losing party acted in a "malicious, fraudulent, deliberate or willful" manner. As Smith acknowledges, the Eleventh Circuit applies the "malicious, fraudulent, deliberate or willful" analysis in the case of fee awards against an *infringer*. *See* Doc. 112 at 7 (citing Lone *Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 363 (11th Cir. 1997)). The "fraud or bad faith" analysis is applied against a non-prevailing *owner*, such as Wal-Mart. *See, e.g., Planetary Motion v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001) (vacating an award of attorneys' fees to the trademark owner because the district court failed to determine whether the infringer acted in a "malicious, fraudulent, deliberate or willful manner"); *Tire Kingdom*, 253 F.3d at 1335 (applying the bad faith standard when ordering a plaintiff trademark owner to pay attorneys' fees to the prevailing defendant).

authority arising exclusively from copyright actions—is inapplicable to this Lanham Act case.

Thus, Smith must meet the Eleventh Circuit's standard of fraud or bad faith before the Court may award attorneys' fees pursuant to the Lanham Act. He has failed to do so. He makes no allegations of fraud, and in his brief he implicitly concedes that he has no evidence of bad faith. *See* Doc. 110-2 at 8 ("Wal-Mart's counterclaims may not have risen to the level of bad faith."); Doc. 112 at 7-8 (acknowledging that the Eleventh Circuit does not follow the "oppressive" or "deliberate" standard, but then arguing to that standard rather than to "bad faith"). As a result, Smith's motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) is hereby DENIED.

### C. Failure to Admit

If a party "fails to admit what is requested under Rule 36 and . . . the requesting party later proves . . . the matter true," Rule 37(c)(2) requires the court to grant the attorneys' fees the requesting party incurred in making the proof. Fed. R. Civ. P. 37(c)(2). The requesting party has no right to attorneys' fees, however, when

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2)(A–D).

Smith claims entitlement to attorneys' fees pursuant to Rule 37(c)(2) because Wal-Mart unreasonably refused to cooperate with his attempt to narrow the legal and factual issues presented to the Court and refused to admit many facts that were established during the course of the cross-motions for summary judgment.

### 1. Admissions 1 and 2

Smith's RFAs 1 and 2 asked Wal-Mart to admit that Smith had "not made a profit on the sales" of items bearing the term "Wal-Qaeda" or "Walocaust." Wal-Mart objected to the RFAs on the grounds that it was "vague and ambiguous in the use of the term 'profit.'"

Given that the first and only relevant[5] definition of "profit" in Black's Law Dictionary is "[t]he excess of revenues over expenditures in a business transaction," the Court agrees with Smith that Wal-Mart's objection to the term "profit" as "vague and ambiguous" was disingenuous at best. *See*

---

[5] The Court trusts that Defendant was not so confused by Plaintiff's use of the word "profit" in RFAs 1 and 2 that it believed Plaintiff intended to invoke a real estate term.

BLACK'S LAW DICTIONARY 1246 (8th ed. 2004).  However, because "Smith's affidavit and supporting records[] established beyond cavil that Smith's revenues were significantly below his costs" and no conclusion in the Court's March 20, 2008 summary judgment Order rested upon its finding that Smith made no profit on his challenged endeavors, the Court also finds Defendant's failures to admit to be of so little importance as to be unworthy of the imposition of sanctions.  See Doc. 110-2 at 10; Fed. R. Civ. P. 37(c)(2)(B).

### 2.   Admissions 4-17, 25-56

Smith also claims that he is entitled to attorneys' fees for Wal-Mart's refusal to make admissions sought regarding infringement, dilution, and fair use with respect to each of the Walocaust designs (RFAs 4-11) and the Wal-Qaeda designs (RFAs 25-51) sold through CafePress, and for Wal-Mart's refusal to make admissions sought regarding confusion, infringement, dilution, fair use, and bad-faith intent to profit with respect to the challenged domain names (RFAs 12-17, 52-56).  In support of his claim, Smith argues that Wal-Mart's answer to the RFAs, "As used in Smith's commercial activities, denied," was evasive and that because the Court so severely discounted its likelihood of confusion and dilution study,

Wal-Mart had no reasonable basis for refusing the RFAs. Again, the Court does not agree.

First, the Court finds that Wal-Mart's response to Smith's requests to admit that Smith's designs did not infringe or dilute Wal-Mart's marks and instead constituted fair use were not the sort of evasive responses that would warrant an award of attorneys' fees pursuant to Rule 37(c). By responding, "As used in Smith's commercial activities, denied," Wal-Mart narrowed the issues before this Court by implicitly admitting that Smith's non-commercial uses did not infringe or dilute Wal-Mart's marks and constituted fair use.

Furthermore, the Court finds that applying Rules 36 and 37 to RFAs 4-17 and 25-56 would be inappropriate. "Rule 36 is a time-saver, designed to expedite the trial and to relieve the parties of the cost of proving facts that *will not be disputed at trial.*" *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002) (emphasis in original; quotation and citation omitted). Here, rather than properly using the rule "to establish uncontested facts and to narrow the issues for trial," Smith instead used these admissions essentially to reissue the complaint and force

Wal-Mart to admit or deny allegations it had already answered. *See id.* at 1268-69.

In addition, Wal-Mart's refusal to admit to the RFAs would be proper if it had "reasonable ground to believe that it might prevail on the matter." *See id.* at 1269 (quoting Fed. R. Civ. P. 37(c)(2)(C)). Here, the Court found that Wal-Mart's dilution and likelihood of confusion study was so unreliable as to fail to create a genuine issue of material fact with regard to Wal-Mart's claims and that no reasonable juror would find consumers likely to confuse Wal-Mart with the Walocaust or Wal-Qaeda. However, the Court did not conclude that Wal-Mart was unreasonable in its belief that it might prevail on its claims. Wal-Mart hired a credentialed expert to design and interpret a survey that, on its surface, appeared to support Wal-Mart's claims. Moreover, by offering for sale products bearing portions of Wal-Mart's marks and by registering domain names that deliberately included the prefix "Wal" and linked to money-raising webpages, Smith committed acts that could have helped to support a finding that he infringed on Wal-Mart's marks. Consequently, the Court finds that no sanctions are warranted for Wal-Mart's refusal to admit RFAs 4-17 and 25-56.

### 3. Admissions 18-21, 57-60

Finally, Smith claims that he is entitled to attorneys' fees as a result of Wal-Mart's refusal to admit that his websites were not likely to be confusing to consumers or that consumers using search engines would be unlikely to experience confusion when they saw search results showing his websites. Smith claims that the truth of the facts in the RFAs was evident based on his affidavit and a "simple review of the relevant web pages and search engine results," and therefore Wal-Mart should have "made the admissions and saved Smith the trouble of proving and briefing the issues."

The Court finds that all of these requests for admission would have required speculation on Wal-Mart's part and therefore were inherently incapable of being admitted or denied as they were stated. In fact, given the novelty of Internet-related trademark cases and survey design, the Court relied heavily on Smith's uncontradicted expert witness evidence in analyzing the point-of-purchase portion of Wal-Mart's consumer survey. Thus, the Court finds that Wal-Mart had good reason for its failure to admit RFAs 18-21 and 57-60, and as a result, no sanctions are warranted. *See* Fed. R. Civ. P. 37(c)(2)(A), (C).

### 4. Conclusion

The Court finds that the exceptions to Rule 37(c)(2) applied to each of the RFAs that Wal-Mart refused to admit. Consequently, Smith's motion for attorneys' fees pursuant to Rule 37(c)(2) is hereby DENIED.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motions for attorneys' fees [106, 110]. Defendant's motion for leave to file a surreply [113] is also **DENIED AS MOOT**.

IT IS SO ORDERED this 20th day of June, 2008.

_____
Timothy C. Batten, Sr.
United States District Judge